IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:19-cv-250

| | | |
|---|---|---|
| EPIC GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| C.B., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") complains of Defendant C.B.[1]

("Defendant") as follows:

## NATURE OF THE ACTION

1.      This is a civil action seeking injunctive relief and damages for (i) copyright

infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*; (ii)

contributory copyright infringement in violation of the Copyright Act, §§ 106 and 501, *et seq.*;

(iii) circumvention of technological measures in violation of the Digital Millennium Copyright

Act ("DMCA"), 17 U.S.C. §§ 1201(a)-(b), 1203; and (iv) trafficking in technology that is

primarily designed, produced, and marketed for the purpose of circumventing a technological

measure that effectively controls access to a copyright protected work in violation of the DMCA.

---

[1] On information and belief, Defendant is a minor. Pursuant to F. R. Civ. P. 17(c) and Local
Civil Rule 17.1(a), the summons for this Complaint will be filed under seal and the minor's
address redacted from the certificate of service, and service of process will be made on the
minor's mother and general guardian.

2.	The Copyright Act protects the owners of creative works from the unauthorized use of those works by others. The right to prepare derivative works based upon a copyrighted work and to publicly perform and display a copyrighted work (or derivatives thereof) are some of the exclusive rights granted to copyright holders under the Act. The definition of derivative work encompasses any form in which the original work may be recast, transformed, or adapted. The exclusive right of public performance includes the public broadcast of audiovisual works, and the exclusive right of public display includes the right to show a copyrighted work, or a portion or an image of it, to the public. With a few exceptions that do not apply here, it is unlawful to make unauthorized derivative works, and to publicly perform and/or publicly display such works without the permission of the copyright owner. It is likewise unlawful to induce, cause, or materially contribute to the creation of unauthorized derivative works by others.

3.	The DMCA was enacted in 1998 to bring the Copyright Act into the digital age. Among other things, the DMCA provides that a copyright holder may send an Online Service Provider (an "OSP") a written notification of claimed infringement (a "notice") which provides the OSP with certain statutorily-mandated information and serves as notice to the OSP that it is hosting content that infringes the copyright holder's rights. In order to avoid potential secondary liability for hosting the infringing material, the OSP must remove or disable it after receiving the notice and notify the user who posted it. In response, the user who posted it may submit a counter notification stating that the material was removed due to mistake or misidentification. Once submitted, the counter notification commences a 14-day period during which the copyright holder who submitted the notice must file an action which seeks to restrain the user from engaging in infringing activity. If the copyright holder does not file the action, the OSP is to restore the material at issue.

4. The DMCA prohibits the circumvention of any technological measure that effectively controls access to a copyright protected work and trafficking in circumvention technology. It grants copyright owners the right to enforce these prohibitions.

5. This is a copyright infringement case in which the Defendant is infringing Epic's copyrights by using, marketing, selling, and trafficking in cheat software, part of which is primarily designed to circumvent technological measures that effectively control access to the code of Epic's popular game, Fortnite®.[2] Defendant's cheat software injects unauthorized computer code into Epic's copyright protected Fortnite code to allow its users to cheat at Fortnite. In so doing, Defendant creates unauthorized derivative works of Fortnite by modifying the game's code and, thus, materially alters the game that the code creates and, with it, the experiences of those who play it and those who watch it being played.

6. Defendant posts on his YouTube channel videos of himself playing and cheating at Fortnite by using cheat software ("cheats" or "hacks") to unlawfully modify Fortnite's software code.

7. Although he claims to "***cheat for fun and entertainment, not to essentially steal from those that work hard at what they do***," Defendant uses the videos he creates to induce and enable others to cheat at Fortnite by demonstrating and promoting the hacks he sells, and directing would-be cheaters to websites where the hacks may be purchased. (True and accurate screenshots of Defendant under the name "CBV" discussing his cheating ethos and promoting the sale of hacks are attached hereto as **Exhibits A** and **B** with Defendant's name redacted from Exhibit A.)

8. On information and belief, Defendant financially benefits from these sales.

---

[2] Game names that are registered trademarks of Epic are shown with the federal registration symbol the first time each game name appears and without it thereafter.

9.     These ill-gotten gains come at the expense of Epic and members of the Fortnite community. Defendant's cheating and inducing and enabling of others to cheat ruin the game playing experience of players who do not cheat because they create an uneven playing field, violate universally understood notions of fair play, and diminish the integrity of the game.

10.    Defendant's conduct is profoundly damaging to Epic because cheating by a relatively small number of players can ruin the experiences of many others.

11.    The most visible harm from Defendant's acts may occur in a virtual world but it is felt in the real one. Defendant's cheating and enabling others to cheat detract from the pleasure Fortnite's players and audience take from the game.

12.    Defendant's conduct is offensive to many members of the Fortnite community, whose enthusiasm about the game is a significant part of what has made the game so successful.

13.    Defendant is ruining not only the games in which he plays and cheats, but also those in which people play and cheat using the hacks he advertises and sells. Each one of these games is important to the 99 other people playing it. None of those other players enjoy being cheated.

14.    The use of the cheat software Defendant promotes and sells, both by Defendant and by those he has enabled to cheat, infringes Epic's copyrights in Fortnite and, on information and belief, violates the DMCA's anti-circumvention and anti-trafficking prohibitions.

15.    Neither Defendant's use of these cheats nor the YouTube videos in which Defendant markets the cheats are fair or fair use. They are unfair and unlawful.

16.    Accordingly, Defendant should be permanently enjoined from continuing to engage in the conduct complained of herein, his profits should be disgorged, and he should be made to pay Epic damages and its attorney's fees.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 106 and 501, *et. seq.*

18. This Court has personal jurisdiction over Defendant because, as described below, he agreed to be subject to the exercise of jurisdiction over him by the courts in this District. This Court also has personal jurisdiction over the Defendant because he has purposefully availed himself of the privileges of conducting activities and doing business in North Carolina and in this District, thus invoking the benefits and protections of North Carolina's laws, by entering into contractual agreements with Epic in North Carolina, and repeatedly accessing Epic's servers, which are located in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a district in which a substantial part of the events giving rise to Plaintiff's claims occurred, in which Defendant committed acts of copyright infringement, and/or where Plaintiff's injuries were suffered. Venue is also proper in this District because, as described below, Defendant consented to venue in this District.

## THE PARTIES

20. Epic is a corporation duly organized and existing under the laws of the State of Maryland. Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

21. On information and belief, Defendant C.B., a.k.a. "CBV," is a minor citizen and resident of Illinois.

# FACTS APPLICABLE TO ALL CLAIMS

## *Epic and Fortnite*

22.     Founded in 1991, Epic is a Cary, North Carolina-based developer and publisher of computer games and content creation software. Epic is recognized worldwide as the creator of the Unreal®, Gears of War®, and Infinity Blade® series of games. Epic is also globally known as the creator of the Unreal Engine® game engine and suite of content creation tools. More recently, Epic released the virtual reality game Robo Recall®, and Fortnite.

23.     First released in a limited manner in October 2013, Fortnite's first game mode, now known as "Fortnite: Save the World," is a co-op survival and building action player vs. environment ("PvE") game in which players may join together online to build forts, weapons, and traps in an effort to rebuild and defend towns left vacant in the wake of "the Storm" from the monsters that populate this Fortnite world.

24.     Fortnite was released broadly on July 25, 2017.

25.     Fortnite's free-to-play "Battle Royale" game mode was released to the public on September 26, 2017. (A true and correct screen print from the Fortnite page on Epic's website [available at: https://www.epicgames.com/fortnite/en-US/play-now/battle-royale] that provides a glimpse of the characters that populate Fortnite's fanciful and cartoonish world is pictured below at **Figure 1**.)



**Figure 1**

26.     Like other games in the "battle royale" genre, Fortnite Battle Royale involves dropping (in Fortnite, by glider from a flying "battle bus") a limited number of players into a large map. Fortnite Battle Royale combines Fortnite's building skills and destructible environments with intense player vs. player ("PvP") combat.

27.     As the game goes on, the encroaching storm shrinks the habitable part of the map, forcing surviving players closer and closer together. The players battle each other until the last player or team remains standing. That player or team wins the game.

28.     In designing Fortnite Battle Royale, Epic made a conscious choice <u>not</u> to sell items to players that would give any player a competitive advantage. This decision was made to ensure a fair playing field for all.

29.     Since its broad release on July 25, 2017, the Fortnite community has grown to almost 250 million accounts, and sometimes has more than 8 million concurrent players.

30.     In addition to the tens of millions of people who actively play Fortnite, tens of millions of others watch "streamers" broadcast (or "stream") Fortnite game play on various

platforms, including YouTube and Twitch, Amazon's popular online service for watching and streaming digital video, where Fortnite is reportedly one of the most-viewed games.

31. The Fortnite channel on Twitch has 30,594,594 followers. In the second week of May 2019, Fortnite ranked number one on Twitch with 29.5 million hours total number of hours watched.

32. To encourage and support Fortnite's players and its audience, in May 2018 Epic announced that it would provide $100 million dollars to fund prize pools for Fortnite e-sports competitions.

### *Epic's Copyrights in Fortnite*

33. Epic is the author and owner of all the rights, title, and interest in the copyrights in Fortnite, including without limitation, in its computer software and the audio-visual works that software creates.

34. Epic's copyrights in various versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), TX008-352-178 (dated December 23, 2016), and U.S. Copyright Reg. No. TX0008-507-210 (dated March 21, 2018) (True and correct copies of these certificates of registration are attached hereto collectively as **Exhibit C**.)

### *Epic's Terms of Service*

35. In order to play Fortnite on PC—which is the platform on which Defendant is accessing and cheating at Fortnite—a user must first create an account with Epic. In order to create an account, a would-be user must affirmatively acknowledge that he or she has "read and agree[d] to the Terms of Service" (the "Terms" at pg.1.) (A true and correct copy of the Terms of Service is attached hereto as **Exhibit D**.)

36.     The Terms apply to any use of, or access to, Fortnite using one's PC, as Defendant did in this case.

37.     The Terms also apply to any use of Epic's websites by any "guest or [] registered user" of "any content, functionality, products, and services offered on or through" Epic's websites. (*See id*. at 1.) This encompasses Epic's Fortnite website and its guests and registered users.

38.     The Terms further apply to a user's "use of other Epic services that display or include [the] Terms." (*Id.*) This, too, covers Fortnite and those who use it.

39.     The Terms request that users read the Terms "carefully" before beginning to access or use Epic's services. (*Id.*)

40.     The Terms provide that "[b]y using [Epic's s]ervices, [the user] accept[s] and agree[s] to be bound and abide by these Terms . . ." (*Id.*) The Terms further provide that a user who does not want to agree to the Terms "must not use [Epic's] services." (*Id.*)

41.     The Terms include a section on "Governing Law and Jurisdiction," which provides that "[a]ny dispute . . . arising out of or related to these Terms ("Claim") shall be governed by North Carolina law . . . . For any disputes deemed not subject to binding individual arbitration . . . you and Epic agree to submit to the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina." (*Id.* at 3.)

42.     The Terms specifically exempt "claims of piracy, creation, distribution, or promotion of Cheats (i.e., means programs, methods, or other processes which may give players an unfair competitive advantage in Fortnite), and intellectual property infringement" from arbitration. (*Id.* at 3.)

43.     The Terms further provide that, by agreeing to the Terms, the user "agree[s] to waive any jurisdictional, venue, or inconvenient forum objections to such courts …." (*Id.*)

44.     The Terms explain that the services "including all content, features, and functionality thereof, are owned by Epic, its licensors, or other providers of such material and are protected by United States and international copyright . . . laws." (*Id.* at 1.)

45.     The Terms also inform the user that use and access of certain "software or services . . . may be subject to separate agreement . . . such as end user license agreements." (*Id.*)

46.     The Terms also include an "Intellectual Property Rights" section which sets forth the permissions users have with respect to Epic's intellectual property and things that users are prohibited from doing. Specifically, the Terms provide that users:

    a.      are "permitted to use [Epic's s]ervices for [their] personal, non-commercial use only or legitimate business purposes related to [their] role as a current or prospective customer of Epic"; **but**

    b.      "**must not copy, modify, create derivative works of**, **publicly display**, **publicly perform**, republish, **or transmit any of the material obtained through [Epic's s]ervices**, or delete, or alter any copyright, trademark, or other proprietary rights notices from copies of materials from [Epic's s]ervices"; and

    c.      "**must not** reproduce, **sell, or exploit for any commercial purposes any part of [Epic's s]ervices, access to [Epic's s]ervices or use of [Epic's s]ervices or any services or materials available through [Epic's s]ervices**."

(*Id.* at 1-2.) (emphasis added).

## *Fortnite End User License Agreement*

47.     In order to play Fortnite on PC, as Defendant did here, a user must first acknowledge that he or she has read and agreed to abide by the terms in the Fortnite End User License Agreement for PC ("EULA"). (A true and correct copy of the EULA is attached hereto as **Exhibit E**.)

48.     The EULA applies to any user who downloads, uses, or "otherwise indicat[es] acceptance" of the EULA. (*Id.* at 1.)

49.     Like the Terms, the EULA explicitly requests that individuals read the EULA "carefully." (*Id.*) The EULA further makes clear that the EULA "is a legal document that explains [the user's] rights and obligations" in connection with the access and use of Fortnite. (*Id.*)

50.     The EULA includes a section titled "Governing Law and Jurisdiction" under which the user agrees that the EULA will be deemed to have been made and executed in the State of North Carolina. (*Id.* at 5.)

51.     This section of the EULA further provides that "[users] and Epic agree to submit to the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina." (*Id.*)

52.     Under this section of the EULA, the user agrees to "waive any jurisdictional, venue, or inconvenient forum objections to such courts." (*Id.*)

53.     The EULA specifically exempts "claims of piracy, creation, distribution, or promotion of Cheats (i.e., means programs, methods, or other processes which may give players an unfair competitive advantage in Fortnite), and intellectual property infringement" from arbitration. (*Id.* at 3.)

54. The EULA grants an individual user "a personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use the Software on compatible devices [the user] own[s] or control[s] for [the user's] personal entertainment use." (*Id.* at 1.)

55. Epic also includes a "License Conditions" section in its EULA. (*Id.*) In that section, the EULA specifically defines certain prohibited activities and states that **a player may not:**

    a. "**copy, reproduce, distribute … , display, or use [Fornite] in a way that is not expressly authorized in this Agreement**;"

    b. "**reverse engineer, derive source code from, modify, adapt, translate, decompile, or disassemble it or make derivative works based on it**;" and

    c. "**create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes**;" and

    d. "**behave in a manner which is detrimental to the enjoyment of the Software by other users as intended by Epic.**"

(*Id.* at 1-2.) (emphasis added.)

### *Defendant and His Unlawful Acts*

56. Defendant is a cheater.

57. Nobody likes a cheater. And nobody likes playing with cheaters.

58. Defendant not only cheats, he advertises and sells cheat software that enables others to cheat.

59. Defendant uses, markets, and sells what he calls "hacks" to unlawfully modify Fortnite's software so that he and his customers have an unfair competitive advantage over other players when playing Fortnite.

60.     These hacks give the cheater using them power to do or see things that others players cannot.

61.     For instance, "aimbots" enable those who use them to automatically target and kill other players without having to carefully aim their weapons. Hacks that include "ESP" enable those who use them to see what they are not intended to see, including other players who would otherwise be out of sight and valuable hidden "loot." Likewise, "wallhacks" enable those who use them to see other players hiding behind walls and other obstructions. "Spoofers" allow their users to circumvent cheating bans by disguising the Hardware ID ("HWID") associated with the computer that they used to cheat.

62.     Defendant's hacks give those who use them a decided and unfair competitive advantage over other players.

63.     Epic does not allow or support cheats in Fortnite, including in Fortnite Battle Royale.

64.     Defendant downloaded and accessed Fortnite.

65.     Defendant has used cheat software while playing Fortnite.

66.     Defendant promotes and sells cheat software to third parties for his own personal financial gain.

67.     In selling the cheat software he promotes, Defendant has trafficked in technology part of which was primarily designed, produced, and marketed for the purpose of circumventing a technological measure that effectively controls access to Fortnite.

68.     Both Defendant and third parties who have purchased Defendant's cheats have used the cheats to (a) unlawfully circumvent technological measures that effectively control access to the Fortnite software and (b) modify Fortnite's code so that they have an unfair competitive advantage over other Fortnite players.

### *Defendant's Unlawful Cheat Software*

69.     The cheat software used by Defendant (and by those to whom Defendant sells such software) improperly injects unauthorized code into the active memory of the game as it runs. The cheats manipulate the functionality of the game and give the cheater an unfair advantage over other players, changing and disrupting the game.

70.     This unauthorized modification of the game's code as it runs on the cheater's computer and of the code that is sent back to Epic's servers materially changes both the game's code and the audio visual aspects of the game generated by the code. These changes create a different, but substantially similar, version of the Fortnite game than the Fortnite game generated by Epic's copyright protected software.

71.     In using cheat software to modify the game's code in this way, Defendant and other cheaters who use the cheats create unauthorized derivative works based on Fortnite in violation of the Copyright Act.

72.     In an effort to protect Fortnite's code from cheaters like Defendant and his customers, Epic put in place certain technological measures to effectively control access to Fortnite's copyrighted code.

73.     The cheats Defendant uses, distributes, and sells are specifically designed to circumvent these technological measures.

### *Defendant's Advertising of Cheat Software Using Fortnite Videos*

74.     Defendant operates a YouTube channel under the screen name "CBV," which is available at <https://www.youtube.com/channel/UCYhPTtfyt2VQOCsvqe5y2MA/featured> (the "CBV Channel").

75. Defendant created and posted on his CBV YouTube channel several videos in which he uses the hacks to cheat while playing Fortnite. He posted these videos to demonstrate, advertise, and market the hacks he sells.

76. Defendant's posting of Defendant's infringing videos infringes Epic's exclusive rights to publicly display and/or publicly perform its copyrighted works in violation of the Copyright Act.

77. Between February 3, 2015 and the present, Defendant used the CBV Channel to post videos of himself cheating while playing various videogames, including Fortnite. These videos were available at <www.youtube.com/watch?v=pONPQ8LTzlg>, <www.youtube.com/watch?v=IDvPS9kISnA>, <www.youtube.com/watch?v=FKJXYWi20f0>, <www.youtube.com/watch?v=83Cd6-HHSEc>, <www.youtube.com/watch?v=dDW-SAsFw31>, and <www.youtube.com/watch?v=6cwXd1kGyuE>, ("Defendant's infringing videos"). (True and correct copies of screen prints from the CBV Channel, including those showing Defendant's infringing videos, are attached collectively hereto as **Exhibit B**.)

78. In each of these videos, Defendant demonstrated his use of the cheats to unlawfully modify the Fortnite game.

79. In one video titled "AIMBOT HACKING GAMEPLAY [Fortnite AIMBOT + ESP]", Defendant demonstrated how the cheat software he was advertising allowed him to eliminate 20 out of the 99 other players. (A true and correct copy of a screen print from this video is attached hereto as **Exhibit B**, pg. 3.)

80. Defendant prominently advertised that this hack was for sale, directing viewers through text instructions and graphic representations, (e.g., "Purchase Down Below" and "DOWNLOAD LINK IN DESCRIPTION"), to purchase the hack. (True and correct copies of

screen prints showing Defendant's advertisements for cheat software are attached hereto as **Exhibit B** pg. 1; **Exhibit B**, pg. 2.)

81.     One of Defendant's customers reached out to Defendant for help, writing on Defendant's YouTube Community page "I bought aimbot and the video got deleted for instructions. please help." (A true and correct copy of a screen print from Defendant's Community page is attached hereto as **Exhibit F**.)

82.     Defendant openly admits to cheating, recently updating his followers that he would be "streaming soon <3 and **im cheating in fort again**," with a picture of Fortnite showing the game was about to begin. (A true and correct copy of a screen print from Defendant's YouTube Community page is attached hereto as **Exhibit G**) (emphasis added.)

83.     Defendant's CBV Channel has over 141,729 views and more than 12,000 subscribers, each of whom receive notifications every time a video, like one of Defendant's infringing videos, is posted.

84.     On or around June 5, 2019, Epic submitted to YouTube DMCA notices that included all the required elements asking YouTube to remove Defendant's infringing videos. YouTube took down Defendant's infringing videos soon thereafter.

85.     On or around June 6, 2019, Defendant posted on his YouTube Community page "epic just striked all my videos. nice." (A true and correct copy of a screen print from Defendant's YouTube Community page is attached hereto as **Exhibit F**.)

86.     On June 6, 2019, Defendant submitted a counter notification responding to Epic's DMCA takedown notices for the infringing videos in which he stated:

> this video can NOT be taken down, this 100000% falls under the fair use act "Copyright Disclaimer Under Section 107 of the Copyright Act 1976, allowance is made for "fair use" for purposes such as criticism, comment, news reporting, teaching, scholarship, and research. Fair use is a use permitted." i will NOT be bullied by this corporation into not posting content. There are many many

youtubers that make videos on YouTube and they decide to strike
me ? i give very blatant credibility to them.

(A true and correct copy of a screen print of Defendant's counter notification with the contact

information for Epic's personnel and Defendant redacted is attached hereto as **Exhibit H**.)

87.    Defendant posted his counter notification on his YouTube Community page on

YouTube, bragging that "**basically epic has 10-14 days to sue me, <u>if they don't sue me then i</u>**

**<u>get my strikes and channel back</u>. sick about to get sued by epic**." (A true and correct copy of

a screen print from Defendant's YouTube Community page is attached hereto as **Exhibit I**)

(emphasis added.)

### *Defendant's Sale of Hacks/Cheats*

88.    On information and belief, Defendant sells his cheats and hacks on Shoppy and

other platforms under the user name "ShopCamDad." Links to ShopCamDad's hacks and cheats

are posted under Defendant's infringing videos and on the CBV Community page.

89.    On or around June 11, 2019—five days after he bragged about how "sick" it was

that he was "about to get sued by [E]pic"—Defendant posted a link on his YouTube Community

page saying "day keys restocked." (A true and correct copy of a screen print from Defendant's

YouTube Community page is attached hereto as **Exhibit J**.) That link resolves to a Shoppy

purchase page for a "Nexus FN hack/cheat 24 hours" described as "Nexus Fortnite Cheat

Features: - Aimbot - Customizable Player ESP - Customizable FOV - Visibility Check - Player

Head Dot - Bounding box - Skeleton ESP - HWID spoofer included! !" (A true and correct copy

of a screen print from the Shoppy purchase page is attached hereto as **Exhibit K**.)

90.    Along with the Fortnite hacks and cheats posted on the ShopCamDad's Shoppy

page is an option to "donate to CBV." (A true and correct copy of a screen print of

ShopCamDad's Shoppy product page is attached hereto as **Exhibit L**.)

91.     As **Exhibit L** shows, Defendant is selling at least two types of hacks/cheats: the "Fortnite Aimbot=ESP Hack [LIFETIME] Spoofer INCLUDED!," which can be purchased for $250.00, and the "Nexus FN hack/cheat," which can be purchased for one month ($130.00), one week ($40.00), or 24 hours ($10.00). (True and correct copies of screen prints of ShopCamDad's Shoppy product pages are attached hereto as **Exhibits K through O**.)

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Copyright Infringement in violation of
the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)**

92.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 91 of this complaint, as if set forth fully herein.

93.     Epic is the author, creator and owner of all rights, title and interest in a number of valid, registered, and enforceable copyrights in Fortnite.

94.     These copyrights are the subjects of the copyright registration certificates referenced above and attached hereto as **Exhibit C**, and are incorporated by reference as if fully set forth herein.

95.     Defendant has had and continues to have access to Fortnite.

96.     Defendant has infringed and continues to infringe Epic's copyrights in Fortnite by improperly using computer software that injects code into Fortnite's code which then materially modifies and changes Fortnite's code, thereby creating a substantially similar, unauthorized derivative work of Epic's copyrighted Fortnite code.

97.     Epic never authorized Defendant to create derivative works based on Fortnite.

98.    Defendant has also infringed Epic's copyrights in Fortnite by publicly displaying and/or publicly performing these unauthorized derivative works in Defendant's infringing videos posted on YouTube.

99.    Defendant's submission of a DMCA counter notification, which requires YouTube to restore the infringing content unless Epic files an action seeking a court order to restrain Defendant from engaging in infringing activity, creates a continuing risk of copyright infringement.

100.    Epic never authorized Defendant to publicly display or publicly perform the unauthorized derivative works.

101.    In creating such unauthorized derivative works and by publicly displaying and/or publicly performing Defendant's unauthorized derivative works, Defendant has infringed Epic's copyrights and is liable to Epic for direct and willful infringement under 17 U.S.C. §§ 501, *et seq*.

102.    Defendant engages in such conduct to promote cheats using his YouTube channel because Defendant obtains a financial benefit from the video postings complained of, and obtains a financial benefit from the sale of the cheats he promotes and demonstrates.

103.    On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's infringement.

104.    In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

105.    In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendant's willful infringement.

106.    Defendant's conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Epic has no adequate remedy at law for Defendant's wrongful conduct because (i) Epic's copyrights are unique and valuable property that have no readily determinable market value; (ii) Defendant's infringement constitutes an interference with Epic's goodwill and customer relations, and (iii) Defendant's wrongful conduct, and the damages resulting therefrom are continuing.

107.    Moreover, the plain language of the DMCA requires that Plaintiff file an action seeking a court order to restrain Defendant from engaging in infringing activity within 14 days of Defendant's counter notification.

108.    Therefore, Epic is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order under 17 U.S.C. § 503(a) that prohibits Defendant from further infringing Epic's copyrights and orders Defendant to destroy all copies of infringing videos and the cheats he is using against Epic in violation of Epic's copyrights

109.    Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### SECOND CLAIM FOR RELIEF
**(Contributory Copyright Infringement**
**in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)**

110.    Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 109 of this complaint, as if set forth fully herein.

111.    As set forth above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

112.    As also set forth above, Defendant has created and posted videos demonstrating his use of the cheat software in Fortnite, promoting the cheat to others, inducing them to use it in

Fortnite, and providing users a way to obtain the cheat at least by way of directing them to the ShopCamDad Shoppy product page.

113.    As described above, this cheat software unlawfully modifies Fortnite's copyrighted code in a manner that infringes Epic's copyrights by creating unauthorized derivative works of, and substantially similar to, Epic's Fortnite software.

114.    By providing users with access to the cheat, Defendant materially contributes to the direct infringement of Epic's copyrights, actively encourages and induces other cheaters and would-be cheaters to purchase and use the cheat, and supports their use of the cheat in Fortnite.

115.    Defendant has actual knowledge of the direct copyright infringements of the cheaters described above, by virtue of, without limitation, his linking to the website where the cheats could be purchased, his sale of the cheats under the username "ShopCamDad," and is causing or contributing materially to, and/or participating substantially in, such direct infringement.

116.    As set forth above, Defendant's submission of the DMCA counter notification requires that YouTube restore the infringing videos and their links to the cheats, which creates a continuing risk of contributory copyright infringement, unless Epic files a lawsuit.

117.    Defendant engages in his acts of contributory infringement with the actual and/or constructive knowledge that the preparation of derivative works based upon Epic's Fortnite software infringes Epic's copyrights in the software.

118.    On information and belief, Defendant engages in such conduct to promote the cheats on his YouTube channel and social media accounts because Defendant obtains some financial benefit or value in consideration for his video postings and/or the sale of the cheats he promotes and demonstrates in Defendant's infringing videos.

119.     Accordingly, Defendant is liable for contributory copyright infringement of Epic's Fortnite game.

120.     On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's contributory infringement.

121.     In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

122.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendant's willful contributory infringement.

123.     As a result of Defendant's contributory copyright infringement, Epic has suffered and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill, as well as actual losses in an amount not yet fully ascertained, but which will be further determined according to proof. Epic's remedy at law is not adequate to redress the harm Defendant has caused and will continue to cause unless and until his conduct is otherwise restrained and enjoined.

124.     Moreover, the plain language of the DMCA requires that Plaintiff file an action seeking a court order to restrain Defendant from engaging in infringing activity within 14 days of Defendant's counter notification.

125.     By reason of the foregoing, Epic is entitled to injunctive relief against Defendant pursuant to 17 U.S.C. § 502.

126.     Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## THIRD CLAIM FOR RELIEF
### (Circumvention of Technological Measures in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b))

127.    Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 126 of this complaint, as if set forth fully herein.

128.    As alleged above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

129.    Epic has designed technological security measures to prevent and control unauthorized access to Fortnite, and has implemented these measures in order to protect its copyrighted works.

130.    Defendant is using, promoting, and selling cheat software that contains technologies, products, services, devices, components, or parts that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite.

131.    The parts of the cheats that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite have no commercially significant purpose or use other than to circumvent Epic's technological security measures put in place to control access to Fortnite and protect Epic's copyrighted works, and unlawfully modify Epic's game software code.

132.    Defendant's actions constitute a violation of the DMCA, 17 U.S.C. §§ 1201(a)-(b) and 1203.

133.    Defendant's actions have been, and continue to be, willful and continue to be performed without the permission, authorization, or consent of Epic.

134.    As a direct result of Defendant's violations of the DMCA, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no

adequate remedy at law. Epic is entitled to injunctive relief restraining and enjoining Defendant's continuing unlawful conduct under 17 U.S.C. § 1203(b).

135.    As a direct result of Defendant's violations of the DMCA, Epic is entitled to actual damages and Defendant's additional profits attributable to Defendant's violations of the DMCA under 17 U.S.C. § 1203(c).

136.    Alternatively, Epic is entitled to the maximum statutory damages permitted pursuant to 17 U.S.C. § 1203(c).

137.    Epic is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b).

## FOURTH CLAIM FOR RELIEF
### (Trafficking in Circumvention Devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b) and 1203)

138.    Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 137 of this complaint, as if set forth fully herein.

139.    As alleged above, Epic owns the exclusive rights to all right, title and interest in Fortnite, along with valid, registered, and enforceable copyrights in Fortnite.

140.    In order to protect its rights in Fortnite, Epic has designed and put in place technological measures that effectively control access to Fortnite.

141.    On information and belief, Defendant has created and is offering to the public, providing, and otherwise trafficking in the United States cheat software that, on information and belief, contains technology, components, or parts, which, are primarily designed to circumvent the technological security measures Epic has put in place to control access to Fortnite's code.

142.    For instance, Defendant promotes, sells, and distributes the cheats using his YouTube channel and on Selly and other platforms.

143.     On information and belief, these cheats have no commercially significant purpose or use other than to (a) circumvent Epic's technological security measures, which were put in place to control access to Fortnite and protect Epic's copyrighted works, and (b) unlawfully modify Epic's game software code.

144.     Defendant's actions constitute a violation of the DMCA, 17 U.S.C. §§ 1201(a)-(b) and 1203.

145.     As a direct result of Defendant's violations of the DMCA, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law.

146.     Epic is entitled to injunctive relief restraining and enjoining Defendant's continuing unlawful conduct under 17 U.S.C. § 1203(b).

147.     As a direct result of Defendant's violations of the DMCA, Epic is entitled to actual damages and Defendant's profits attributable to Defendant's violations of the DMCA under 17 U.S.C. § 1203(c)(2).

148.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

149.     Epic is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment in its favor, and against Defendant, for the following:

1.     Enter judgment in Plaintiff's favor and against Defendant on all claims herein;

2.     Adjudge Defendant to have infringed Epic's copyrights in violation of the

Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq*.;

3.      Adjudge Defendant to have contributorily infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq*;

4.      Adjudge Defendant to have circumvented a technological measure that effectively controls access to a protected work owned by Epic in violation of 17 U.S.C. §§ 1201(a)-(b), 1203, *et seq*.;

5.      Adjudge Defendant to have trafficked in technologies, products, services, devices, components, or parts thereof that circumvent a technological measure that effectively controls access to a protected work owned by Epic in violation of 17 U.S.C. §§ 1201(a)-(b) and 1203, *et seq*.;

6.      Declare that Defendant's infringement and other wrongdoings were willful in nature;

7.      Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily and permanently enjoins Defendant from (i) infringing any of Epic's copyrighted works, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyrighted software in violation of the Copyright Act; (ii) inducing or materially contributing to the direct infringement of any of Epic's copyright protected work by others, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyright protected work in violation of the Copyright Act; (iii) using any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected work, where the technological measure effectively controls access to Epic's copyrighted Fortnite code in order to protect Epic's exclusive rights in Fortnite; (iv) trafficking in any technology, product, service, or

device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected work Fortnite, where the technological measure effectively controls access to Epic's copyrighted Fortnite code in order to protect Epic's exclusive rights in Fortnite;

8.      Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily and permanently enjoins Defendant by requiring the impounding and destruction of (i) all copies of Defendant's infringing videos, (ii) all copies of cheats and hacks in Defendant's possession, custody, or control that can be used to infringe Epic's copyrights in Fortnite, and (iii) any technology, product, service, or device in Defendant's possession, custody, or control, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Fortnite, so as to restrain Defendant's continued violations of Epic's copyrights in Fortnite;

9.      Enter an order pursuant to 17 U.S.C. §§ 504 and 1203(c) requiring that (i) Defendant pay Epic a sum certain reflecting the maximum amount of statutory damages permitted under 17 U.S.C. §§ 504 and 1203; or, in the event that Epic elects to instead to recover actual damages and Defendant's additional profits from Defendant at any time before final judgment is rendered, that (ii) Defendant pay Epic's actual damages and Defendant's profits, together with interest, including pre-judgment, as fixed by the Court;

10.      Enter an order pursuant to 17 U.S.C. §§ 505 and 1203(b) awarding Epic its attorneys' fees, costs, and expenses; and

11.      Award Plaintiff such other and further relief as the Court deems just and proper.

*[Signature block on following page]*

This the 18th day of June, 2019.

PARKER POE ADAMS & BERNSTEIN LLP

/s/ Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834
christhomas@parkerpoe.com
Catherine R.L. Lawson
N.C. Bar No. 44574
catherinelawson@parkerpoe.com
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone:     (919) 835-4626
Facsimile:     (919) 834-4564

*Attorneys for Plaintiff Epic Games, Inc.*