## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EPIC GAMES, INC.,                                          :

                                        :  Civil Action No. 5:19-cv-00250-FL

               Plaintiff,                            :

       v.                                               :

                                        :

C.B.,                                                             :

                                        :

               Defendant.                          :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

Defendant C.B. is a child who lives in Illinois with absolutely no connection to North Carolina.  Nonetheless, Plaintiff Epic Games, Inc. ("Epic"), a multibillion company, wants to drag him into court here.  Exercising jurisdiction over C.B. would be unfair and unreasonable, as well as forbidden by the United States Constitution.

*First*, Epic's allegation that this Court has personal jurisdiction over C.B. because C.B. agreed to it is both legally and factually meritless.  According to Epic, C.B. had to agree to the terms of "click-through agreements" – which includes consent to jurisdiction –  before playing Epic's video game, *Fortnite*.  However, agreements with minors are unenforceable.  Even more, the very agreements which Epic rely on explicitly state that children cannot enter into those agreements.

*Second*, Epic fails to cite any statutory provision which would confer jurisdiction over C.B.  This is unsurprising, as there is nothing in North Carolina's long-arm statute which does so in this case.

*Third*, exercising jurisdiction over C.B. would violate the Due Process Clause of the Fourteenth Amendment.  Forcing an Illinois child to defend himself in a North Carolina court would clearly offend traditional notions of fair play and substantial justice.  Even were this not the case, C.B. has absolutely no connection to North Carolina whatsoever, whether related to the claims in this action or not.

## II.   FACTUAL BACKGROUND

C.B. is a minor who lives in Illinois.  Declaration of C.B. ("C.B. Decl."), ¶¶ 4-6.  He has never stepped foot in North Carolina.  *Id.*, ¶ 7.  He has never owned anything in North Carolina or conducted any business here.  *Id.*, ¶¶ 8-11.  He simply has no connection to North Carolina.

Like many children, C.B. enjoys playing video games. One such game is *Fortnite*, which C.B. has installed and plays on his personal computer. *Id.*, ¶ 12. While *Fortnite* may require its players to read "click-through agreements," C.B. has never read them. *Id.*, ¶¶ 15-16. Why would he? He is a kid.

## III.   LEGAL PRINCIPLES

The plaintiff bears the burden of demonstrating personal jurisdiction upon challenge by a defendant, which it must do by a preponderance of the evidence. *See Grayson v. Anderson*, 816 F.3d 262, 267-68 (4th Cir. 2016). While a plaintiff needs to make a prima facie showing, it must be factually supported with affidavits or other evidence and not rest merely on conclusory statements. *See Yates v. Davis*, No. 4:18-CV-1-FL, 2018 U.S. Dist. LEXIS 117609, at *3-4 (E.D.N.C. July 16, 2018) (citing *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983)). Thus, when a defendant rebuts a plaintiff's factual allegations with evidence, the "plaintiff *must* come forward with affidavits or other evidence to counter defendant's arguments" in order to prevail. *Henderson v. Rosen*, No. 5:13-CV-635-FL, 2013 U.S. Dist. LEXIS 165065, at *8 (E.D.N.C. Nov. 20, 2013) (citation omitted) (emphases added).

In order to carry its burden to show that personal jurisdiction exists over a defendant, the plaintiff must show that (1) the North Carolina long-arm statute confers personal jurisdiction over the defendant; and (2) doing so comports with the Due Process Clause of the Fourteenth Amendment. *See Cem Corp. v. Pers. Chemistry*, 55 Fed. App'x. 621, 623 (4th Cir. 2003).

Due process is satisfied only if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend itself in the forum "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotations omitted). "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of

2

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (citation omitted). In determining whether there is personal jurisdiction, "the 'primary concern' is 'the burden on the defendant.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Jurisdiction can be general or specific. To establish general jurisdiction, a defendant's activities in the forum state must be "continuous and systematic." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). To establish specific jurisdiction, a defendant's contacts with the forum state must form the basis for the suit. *Id.* In determining this, a court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (citations omitted).

## IV.    ARGUMENT

Epic cannot show that there is jurisdiction over C.B. in this forum for at least three reasons. *First*, there exists no enforceable agreement whereby C.B. may have consented to jurisdiction in North Carolina. He is a minor and any agreements with him are void. Even if this were not the case, the agreements on which Epic relies explicitly state that they cannot be entered into by children such as C.B. *Second*, North Carolina's long-arm statute does not confer jurisdiction under the facts alleged in this case. *Third*, exercising jurisdiction over C.B. would violate the Due Process Clause of the Fourteenth Amendment.

### A.  There Are No Enforceable Agreements Between C.B. and Epic

Epic primarily relies on the Terms of Service ("TOS") and End User License Agreement ("EULA") – both "click-through agreements" – that a *Fortnite* player purportedly agrees to in

playing the game, which Epic alleges subjects the player to jurisdiction in North Carolina.

Complaint, ¶¶ 18, 35, 41, 47, 50. However, it is well established that agreements with minors

are unenforceable. *See, e.g.*, *Kelly v. United States*, 809 F. Supp. 2d 429, 434 (E.D.N.C. 2011)

(contracts with minors invalid in North Carolina); *Severs v. Country Mut. Ins. Co.*, 89 Ill. D 515,

520, 434 N.E.2d 290, 292 (Ill. 1982) (a minor generally "cannot enter into a contract which can

be enforced against him" in Illinois).[1]  This is because minors do not have legal capacity to enter

into a contract. *Kelly*, 809 F. Supp. 2d at 434. Because C.B. is a minor, Epic cannot enforce the

terms of the TOS and EULA (which include consenting to jurisdiction in this forum) against

C.B.

Even further, the TOS and EULA which Epic rely on themselves explicitly state "[t]o

enter into the contract created by these terms, you must be an adult of the legal age of majority in

your country of residence." Ex. D at 2; *see also* Ex. E at 2 (same). The age of majority in both

Illinois and North Carolina is 18. *Tersavich v. First Nat'l Bank & Trust Co.*, 194 Ill. App. 3d

972, 975, 551 N.E.2d 815, 817 (Ill. App. Ct. 1990) (Illinois); *Crouch v. Crouch*, 14 N.C. App.

49, 50-51, 187 S.E.2d 348, 349 (N.C. Ct. App. 1972) (North Carolina). Because C.B. is not the

age of majority, Epic's own agreements foreclose any contract formation between Epic and C.B.

### B.  North Carolina's Long-Arm Statute Does Not Confer Jurisdiction

In order to carry its burden to show that personal jurisdiction exists over C.B., Epic must

show that (1) the North Carolina long-arm statute confers personal jurisdiction over C.B.; and (2)

doing so comports with the Due Process Clause of the Fourteenth Amendment. *See Cem Corp.*,

55 Fed. App'x. at 623. Epic entirely fails the first requirement.

---

[1] A choice of law analysis would not change the result because it would be the same whether
Illinois or North Carolina law applies.

The Complaint does not specify any statutory provision by which North Carolina can exercise jurisdiction over C.B. This is unsurprising, because there is no provision in North Carolina's long-arm statute which Epic can argue confers jurisdiction without running afoul of Rule 11. *See generally* N.C. Gen. Stat. § 1-75.4. For example, Epic cannot rely on N.C. Gen. Stat. § 1-75.4(3) because C.B. has never been in North Carolina, must less commit any act therein giving rise to this action. Epic also cannot rely on N.C. Gen. Stat. § 1-75.4(4) because C.B. never carried out "[s]olicitation or services activities directly or indirectly in North Carolina or send unsolicited bulk e-mail. In short, there is no provision in North Carolina's long-arm statute that Epic can rely on.

**C. Exercising Jurisdiction Over C.B. Would Not Comport With Due Process**

Even if there are any provisions in North Carolina's long-arm statute that confer jurisdiction over C.B. – which there are not – the application of this statute must still comport with the Due Process Clause of the Fourteenth Amendment. *Le Bleu Corp. v. Std. Capital Grp., Inc.*, 11 Fed. App'x. 377, 379 (4th Cir. 2001) (citing *Stover c. O'Connell Assocs.*, 84 F.3d 132, 136 (4th Cir. 1996)). Epic does not and cannot allege that general jurisdiction applies here because C.B.'s contacts with North Carolina are not "systematic and continuous" – indeed, they are non-existent. He has never been to North Carolina and is unconnected in any way to this forum. *See supra* Part II. Thus, Epic alleges only specific jurisdiction, which it utterly fails to establish here. Epic must satisfy *all three* prongs of the specific jurisdiction analysis. *See Vanderhye v. E. Valley Fiduciary Servs.*, No. 1:15-cv-490, 2015 U.S. Dist. LEXIS 193117, at *12-13 (E.D. Va. June 11, 2015). As discussed further below, it does not even come close to satisfying one of them.

5

### 1. C.B. Did Not Purposefully Direct Activities to North Carolina

The first prong analyzes the extent to which C.B. purposefully availed himself of the privilege of conducting activities in North Carolina. *See Carefirst of Md., Inc.*, 334 F.3d at 397. C.B. has never been to North Carolina. There is no one who acts on his behalf in North Carolina. He does not own any property or possessions in North Carolina. He does not conduct any business in North Carolina. He simply has no connection to North Carolina whatsoever. C.B. Decl., ¶¶ 7-11. It is well established that this lack of any connection to the forum state fails to confer specific jurisdiction. *See Young v. FDIC*, 103 F.3d 1180, 1191-92 (4th Cir. 1997) (no specific jurisdiction where defendant had no offices, agents, employees, or property, nor engaged in any business in, nor had any of its employees travel to, the forum state); *Grant v. Shields*, No. 5:02-CV-641-BO(3), 2002 U.S. Dist. LEXIS 25677, at *9-10 (E.D.N.C. Nov. 25, 2002) (absolutely no connection between defendant and forum state other than that plaintiff was located there and plaintiff's injuries were allegedly suffered there); *Vanderhye*, 2015 U.S. Dist. LEXIS 193117, at *13-14 (no specific jurisdiction where defendant did not have offices or conduct business in forum state).

Epic rests C.B.'s "connection" to North Carolina on their allegation that he accesses Epic's servers there, presumably when C.B. plays *Fortnite* – a game played with other people over the Internet. *See* Complaint, ¶ 18. As an initial matter, this rests on a factual inaccuracy. According to publicly-available information, there are four *Fortnite* servers in the U.S. – and none of them are in North Carolina. *See* Declaration of David Hecht, Ex. 1 at 5.

Even if there exist *Fortnite* servers in North Carolina that C.B. connects to while he plays the game, this falls far short of "purposeful availment." As discussed above, publicly-available information indicates that there are no *Fortnite* servers in North Carolina. C.B. himself is unaware of any such servers there, nor is he aware that Epic is located in North Carolina. C.B.

6

Decl., ¶¶ 13-14.  C.B. cannot purposefully target North Carolina in any way when he is unaware that he is connecting to North Carolina at all.  And whether or not C.B. is aware of any connection to North Carolina, connecting to servers there while playing an online game is a slender reed on which to rely on for exercising jurisdiction.  Courts have consistently found that such a tenuous connection falls far short of the requisite showing.  *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (that defendants' website was accessible online, including from Virginia, was insufficient to demonstrate that defendants were intentionally directing their website content to Virginia); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714-15 (4th Cir. 2002) (defendant's act of merely sending electronic signals to Maryland insufficient to establish that defendant purposely availed itself of conducting business or transactions in Maryland).

> ### 2. Epic's Claims Do Not Arise Out of Any Activities Conducted by C.B. in North Carolina

The second prong asks whether Epic's claims arise out of C.B.'s activities directed at North Carolina.  *See Carefirst of Md., Inc.*, 334 F.3d at 397.  Epic's claims against C.B. are essentially that a child hacked the *Fortnite* software that was developed by a multibillion dollar company responsible for developing some of the biggest games and game engines in the world.  Whether this reflects more on the implausibility of the claims or the competence of Epic's developers, the more pertinent issue here is that *none* of these claims arise from *any* of C.B.'s activities in North Carolina.  Epic alleges that C.B.

C.B. installed the *Fortnite* software on his personal computer and plays it there.  C.B. Decl., ¶ 12; Complaint, ¶¶ 35, 47.  Epic alleges that C.B. modified the game's code – giving rise to their alleged "cheating" – *on his computer.  See* Complaint, ¶¶ 69-70 ("modification of the game's code … on [C.B.'s] computer").  But this computer is in Illinois where C.B. lives, so any

7

activities that give rise to these claims could have occurred only in Illinois. This does not confer specific jurisdiction. *See PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x. 237, 242 (4th Cir. 2017) (breach of contract claims did not arise out of defendant's activities in the forum state (South Carolina) because they were alleged to occur in Washington and an "unspecified location").

Epic also alleges that there is specific jurisdiction over C.B. because he "enter[ed] into contractual agreements with Epic in North Carolina." Complaint, ¶¶ 18, 50. As discussed above, there are no such agreements because C.B. is a minor. *See supra* Part IV.A. Even if there somehow were agreements, which there are not, C.B. could not have entered into them in North Carolina because he has never set foot there. C.B. Decl., ¶ 7. This is plainly insufficient to satisfy the second prong of the specific jurisdiction analysis. *See PTA-FLA, Inc.*, 715 F. App'x. at 242 (no specific jurisdiction where defendant did not negotiate or enter into agreements at issue in forum state); *see also Le Bleu Corp.*, 11 Fed. App'x. at 380 ("A contract with a resident of a forum does *not* automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction.").

### 3. Exercising Jurisdiction Over C.B. Would Be Unreasonable

Even if a defendant has the requisite minimum contacts with the forum state, the exercise of personal jurisdiction over that defendant must still be "reasonable." *See Carefirst of Md., Inc.*, 334 F.3d at 397. This reasonableness inquiry looks to the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). Applying these factors, exercising jurisdiction over C.B. is clearly unreasonable.

The primary concern is the burden on the defendant. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Here, the burden on the defendant would be high. Not only is the defendant a child, but he resides in Illinois. C.B. Decl., ¶¶ 4-6. Forcing a child – who has never been to and has no connection whatsoever to North Carolina – to travel from Illinois to North Carolina to defend himself is clearly a weighty burden. *See Grant*, 2002 U.S. Dist. LEXIS 25677, at *1, 12 (significant burden on New York defendant to defend himself in North Carolina); *Vanderhye*, 2015 U.S. Dist. LEXIS 193117, at *21 (substantial burden on Arizona defendant with no meaningful connections to Virginia to defend itself in Virginia); *FDIC*, 103 F.3d at 1192 (large burden on Bahamas defendant to travel to South Carolina).

As to the other reasonableness factors, they do not help Epic and certainly do not outweigh the heavy burden of forcing a child to defend himself in an out-of-state court. North Carolina has little to no interest in adjudicating this dispute as all of the claims arise from activities that would have had to occur in Illinois – hacking the *Fortnite* software installed on C.B.'s personal computer. There are also no North Carolina laws at issue, with the only ones being federal laws. *See* Complaint, Counts I-II (Copyright Act), III-IV (Digital Millennium Copyright Act). And Epic has no interest in obtaining convenient and effective relief in North Carolina because much of the likely relevant evidence (*i.e.*, the software on C.B.'s computer) and witnesses (including C.B.) will be in Illinois. In light of this, exercising jurisdiction over C.B. here would plainly be constitutionally unreasonable.

V.    **CONCLUSION**

For the foregoing reasons, C.B. respectfully requests that this Court dismiss this action in its entirety.

9

Dated: August 5, 2019

Respectfully submitted,

/s/ Jonathan D. Sasser
Jonathan D. Sasser
N.C. Bar No. 10028
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC  27636
Telephone:  (919) 865-7000
jon.sasser@elliswinters.com

David L. Hecht
Yi Wen Wu
PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
277 Park Avenue, 45th Floor
New York, NY 10172
T:  (212) 484-9866
E:  dhecht@piercebainbridge.com
    wwu@piercebainbridge.com

*Counsel for Defendant C.B.*