IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:19-cv-250-FL

| | |
|---|---|
| EPIC GAMES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **STIPULATED ORDER AND PERMANENT** ) **INJUNCTION ON CONSENT** |
| C.B., | ) ) |
| Defendant. | ) ) ) |

Plaintiff Epic Games, Inc. ("Plaintiff" or "Epic") and Defendant C.B., a minor ("Defendant" or "C.B."), together with his mother, representative and general guardian, Kari Bennett ("Defendant's General Guardian" or "Ms. Bennett"), (all collectively, the "Parties") have reached an agreement to settle the above-captioned action and consent to the entry of this Stipulated Order and Permanent Injunction on Consent (the "Consent Order") based on the following stipulated findings of fact and conclusions of law, which the Court hereby adopts for purposes of entry of this Consent Order.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. This Court has proper jurisdiction over the subject matter in this litigation under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 106, 501, 1201, and 1203, *et. seq*. (Comp. [DE 1] at ¶ 17.)

2. This Court has personal jurisdiction over C.B. because C.B. entered into a valid and enforceable agreements with Plaintiff under which he consented to the exercise of this Court's jurisdiction (Complaint [D.E. 1] ("Compl.") at ¶ 18) and because C.B. by and though his

2

general guardian and representative, Ms. Bennett, consented to the jurisdiction of this Court. (Declaration of Kari Bennett ("Bennett Dec.") at ¶ 9.) The Court also has jurisdiction over C.B. under the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4(4) (*See id.*).

3. The Court's exercise of jurisdiction over C.B. comports with due process and is constitutionally reasonable. This Court shall retain jurisdiction over C.B. for the purpose of implementing and enforcing this Consent Order.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a). (Compl. at ¶ 19.) Venue is also proper in this District because, among other things, C.B. entered into valid and enforceable contractual agreements with Epic, the terms of which included his consent to this District being the proper venue. (*Id.* at ¶¶ 19, 43, 52.)

5. Epic, a Maryland corporation with its principal place of business in Wake County, North Carolina, is the creator of Fortnite®, a co-op survival and building action game, and the owner of all intellectual property related to Fortnite, including, without limitation, registered copyrights in Fortnite as set out below. (Compl. at ¶ 20; *see also id.* at ¶¶ 33-34.)

6. C.B. is a resident and citizen of Illinois. (*Id.* at ¶ 21.)

7. In order to access Epic's services, C.B. created an account with Epic and agreed to Epic's Terms of Service (the "TOS"). (*Id.* at ¶ 35.) The TOS includes a section setting forth the permissions users have with respect to Epic's intellectual property and the activities from which users are prohibited from engaging. (*Id.* at ¶ 46, *see also* D.E. 1-5.)

8. In order to play Fortnite on his PC, C.B. agreed to abide by the terms in the Fortnite End User License Agreement for PC ("EULA"). (Comp. at ¶ 47.) The EULA includes a "License Conditions" section, which sets out certain prohibited activities. (*Id.* at ¶ 55; *see also* D.E. 1-6.)

9. Epic is the author and owner of all the rights in and title to valid and enforceable copyrights in Fortnite including, without limitation, in its computer software and the audio-visual works the code creates. (*Id.* at ¶¶ 29, 93.) Epic's copyrights in certain versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), TX008-352-178 (dated December 23, 2016), and TX0008-507-210 (dated March 21, 2018), among others. (*Id.* at ¶¶ 33-34; *see also* D.E. 1-3.)

10. C.B. had access to Fortnite. (*Id.* at ¶ 95.)

11. C.B. used, marketed, and sold cheat software, which he called "hacks," to unlawfully modify Fortnite's software so that he and his customers could have an unfair competitive advantage over other players when playing Fortnite. (*Id.* at ¶¶ 5, 59.)

12. C.B. infringed Epic's copyrights in Fortnite by improperly using cheat software that injected unauthorized code into Fortnite's code which materially modified and changed Fortnite's code, thereby creating a substantially similar, unauthorized derivative work of Epic's copyrighted Fortnite software. (*Id.* at ¶¶ 71, 96.)

13. Defendant also infringed Epic's copyrights in Fortnite by publicly displaying and publicly performing these unauthorized derivative works in Defendant's infringing videos posted on YouTube. (*Id.* at ¶¶ 75-83, 96.)

14. By selling cheat software, C.B. trafficked in technology which was primarily designed, produced, and marketed for the purpose of circumventing a technological measure that effectively controls access to Fortnite. (*Id.* at ¶ 67, 73, 130.)

15. Both C.B. and the third parties who purchased his cheat software have used the cheat software to (a) unlawfully circumvent technological measures that effectively control

access to the Fortnite software and (b) modify Fortnite's code so that they have an unfair competitive advantage over other Fortnite players. (*Id.* at ¶ 68.)

16. C.B. publicly performed his use of cheat software to third parties for personal gain by using cheats while playing Fortnite in at least six videos posted on his "CBV" YouTube channel between February 3, 2018 and June 18, 2019. (*Id.* at ¶¶ 74-77; D.E. 1-2.)

17. C.B. publicly boasted about his cheating, telling his followers "im cheating in fort again." (*Id.* at ¶ 82; *see also* D.E. 1-8.)

18. On or around June 5, 2019, Epic submitted Digital Millennium Copyright Act ("DMCA") take down notifications and asked YouTube to remove certain of C.B.'s videos. (*Id.* at ¶ 84.) YouTube removed the complained-of videos. (*Id.*)

19. On June 6, 2018, following YouTube's removal of the videos, C.B. submitted a counter notification in response to Epic's DMCA notifications. (*Id.* at ¶ 86; *see also* D.E. 1-9.) C.B. posted on his YouTube Community page that "basically epic has 10-14 days to sue me, if they don't sure me then I get my strikes and channel back. sick about to get sued by epic." (*Id.* at ¶ 87; *see also* D.E. 1-10.)

20. C.B. sold his cheat software on Shoppy and other platforms under the user name "ShopCamDad" and posted links to those cheat software purchasing sites under his infringing videos and on the CBV Community page. (*Id.* at ¶ 88-91; *see also* D.E. 1-12–1-16.)

21. C.B. infringed Epic's copyrights in Fortnite by publicly performing unauthorized derivative works of Epic's copyright protected Fortnite code in videos of himself and others cheating at Fortnite which he posted on his YouTube channels. (*Id.* at ¶¶ 92-109.)

22. C.B. contributed to the direct infringement of Epic's copyrights in Fortnite by others in that he publicly performed and promoted the use of cheat software on his YouTube channel (*id.* at ¶¶ 110-126), and sold it from sites accessed by links posted there. (*Id.*)

5

23. Epic designed technological security measures, i.g., anti-cheat measures, to prevent and control unauthorized access to Fortnite, and implemented these measures in order to protect its copyrighted works. (*Id.* at ¶¶ 72, 129.)

24. C.B. circumvented these technological measures in violation of the DMCA by using, promoting, and selling software that contains technologies, products, services, devices, components, or parts that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite. (*See id.* at ¶¶73, 127-137.)

25. The parts of the circumvention devices that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite have no commercially significant purpose or use other than to circumvent Epic's technological security measures put in place to control access to Fortnite, and unlawfully modify Epic's game software code. (*Id.* at ¶¶ 131.)

26. C.B. trafficked in circumvention devices in violation of the DMCA by creating and offering to the public cheat software that contains technologies, products, services, devices, components, or parts that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite on C.B.'s YouTube channel. (*Id.* at ¶¶ 138-149.)

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

27. Defendant, C.B., along with his agents, representatives, partners, joint venturers, servants, employees, and all those persons or entities acting in concert or participations with him, including, without limitation, the organization currently known as "Nexus" and "Nexus Cheats," the website for which is currently accessible through the URL "nexuscheats.us" ("Nexus"), will immediately destroy all copies of any cheat software, cheats, hacks, circumvention software, and spoofer programs in his possession, custody, or control that can be used to infringe any of Epic's

6

copyrights, cheat at any of Epic's games, circumvent any of Epic's anti-cheat measures, or disguise its user's identity or hardware ID, and any videos in which cheat software, circumvention software, or spoofers are used, and is **PERMANENTLY ENJOINED and RESTRAINED** from:

    a. infringing any of Epic's currently existing or future copyrighted works, including without limitation, by (i) using any software or device that copies or modifies Epic's software in violation of the Copyright Act, (ii) creating any unauthorized derivative works based on any of Epic's games or on any game that Epic develops, creates, publishes, or sells; (iii) inducing or materially contributing to the direct infringement of any of Epic's copyright protected works by others, including, without limitation, direct infringement by the use of any software or device that copies or modifies Epic's copyright protected works in violation of the Copyright Act; or (iv) distributing, publicly performing, or publicly displaying an unauthorized derivative work based on any of Epic's games or in any game that Epic develops, creates, publishes, or sells now or in the future;

    b. (i) using any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected works, where the technological measure effectively controls access to Epic's copyrighted code in order to protect Epic's exclusive rights in such code; or (ii) trafficking in any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to any of Epic's copyright protected works, where the technological measure

effectively controls access to Epic's copyrighted code in order to protect Epic's exclusive rights in such code;

c. creating, writing, developing, advertising, promoting, and/or distributing anything that infringes Epic's works now or hereafter protected by any of Epic's copyrights;

d. violating Epic's Terms of Service;

e. violating any of Epic's End User License Agreements to which C.B. is a or becomes a party;

f. cheating at any of Epic's games or at any game that Epic develops, creates, or publishes now or in the future;

g. posting videos or other media that appear to portray cheating or promote cheating through any medium at any of Epic's games or at any game that Epic subsequently develops, creates, or publishes, including without limitation by using, pretending to use, or mentioning the use of any cheat software during gameplay videos that are posted online or otherwise publicly available, and/or by posting hyperlinks or other information that facilitate accessing cheat software, circumvention software or spoofer programs;

h. creating, writing, developing, advertising, promoting, selling, and/or distributing any software or tool that can be used to cheat while playing any of Epic's games or any game that Epic develops, creates, publishes, or sells at any time in the future;

i. engaging in any other activity that constitutes or creates an infringement of any of Epic's copyrights, or of any of Epic's rights in, or rights to use or exploit, its copyrights;

8

j. unfairly competing with Epic in any manner whatsoever; and/or

k. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referenced in paragraphs 27(a) through 27(j), above.

For the purposes of this paragraph 27 only, the term "Epic" includes all of Epic's subsidiaries and affiliated companies. For the purposes of this paragraph 27 only, the advertising, sale or provision of software by Nexus will be deemed to be advertising, sale, or provision of software by C.B., and software in the possession, custody, or control of Nexus will be deemed to be in the control of C.B.

28. No bond or posting of security is required of the Parties in connection with the entry of this Consent Order.

29. Plaintiff and C.B., through his general guardian, Ms. Bennett, acknowledge that they have knowingly and voluntarily entered into this Consent Order after reviewing the same with their counsel or having had ample opportunity to consult with counsel. Plaintiff, C.B., and Ms. Bennett understand the undertakings, obligations, and terms of this Consent Order.

30. Except as to C.B.'s obligations set forth in this Consent Order, Plaintiff's claims against C.B. in this Action are hereby dismissed <u>with prejudice</u>.

31. Epic waives its right to seek an award of its reasonable attorney's fees as the prevailing party in this action under 17 U.S.C. §§ 505 and 1203.

32. This Consent Order is final and Plaintiff and C.B. each hereby waive their rights to appeal from this order.

33. Nothing in this Consent Order precludes Plaintiff or C.B. from asserting any claims or rights that arise after C.B.'s agreement to this Consent Order or that are based upon

9

any breach of, or the inaccuracy of, any representation or warranty made by C.B. or Plaintiff in this Consent Order, or in the Settlement Agreement reached by the Parties.

34. Nothing in this Consent Order precludes Plaintiff or C.B. from asserting any claims or rights against any third party.

35. C.B. waives any objection under Federal Rule of Civil Procedure 65(d) (pertaining to injunctions) to paragraph 27, above.

36. This Court shall retain jurisdiction over this matter to enforce a violation of this Consent Order's terms. If any such violation occurs, the Court shall award, (a) without regard to proof of actual damages, liquidated damages of Five Thousand Dollars ($5,000); as well as (b) injunctive relief enjoining any further breach of this Consent Order, or such modifications to the present Consent Order as the Court deems appropriate; (c) attorneys' fees, costs and disbursements, as determined by the Court; and (d) such other relief as the Court deems just and proper.

IT IS SO ORDERED this 21st day of October, 2019.

_____
LOUISE W. FLANAGAN
UNITED STATES DISTRICT JUDGE

[*Signature block of counsel on the following page*]

**CONSENTED TO:**

| **FOR THE PLAINTIFF:** | **FOR THE DEFENDANT:** |
|---|---|
| /s/Christopher M. Thomas | /s/Jonathan D. Sasser |
| Christopher M. Thomas | Jonathan D. Sasser |
| N.C. Bar No. 31834 | ELLIS & WINTERS LLP |
| christhomas@parkerpoe.com | P.O. Box 33550 |
| Catharine B. Arrowood | Raleigh, NC 27636 |
| N.C. Bar No. 6984 | jon.sasser@elliswinters.com |
| cbarrowood@parkerpoe.com | |
| Catherine R.L. Lawson | David L. Hecht |
| N.C. Bar. No. 44574 | Yi Wen Wu |
| catherinelawson@parkerpoe.com | PIERCE BAINBRIDGE BECK PRICE & HECHT LLP |
| PNC Plaza | |
| 301 Fayetteville Street, Suite 1400 (27601) | 277 Park Avenue, 45th Floor |
| P.O. Box 389 | New York, NY 10172 |
| Raleigh, North Carolina 27602-0389 | dhecht@piercebainbridge.com |
| Telephone: (919) 835-4626 | wwu@piercebainbridge.com. |
| Facsimile: (919) 834-4564 | |
| *Attorneys for Plaintiff Epic Games, Inc.* | |